# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALYCEA K., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, <br><br> Defendant. | Civil Action <br> No. 17-02683 (CPO) <br><br> **OPINION** |

**Appearances:**

Alan H. Polonsky
POLONSKY AND POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

 *On behalf of Plaintiff Alycea K.*

Evelyn Rose Marie Protano
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
6401 Security Blvd
Baltimore, MD 21235

 *On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

**O'HEARN, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Alycea K.'s[1] appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's final decision.

## II.   BACKGROUND

This appeal comes before the Court for a second time after being remanded on October 21, 2018, for consideration of new evidence. (Order, ECF No. 15). The Court will briefly discuss the administrative and procedural history as it is relevant to this appeal but the following is not intended to be a comprehensive recitation.

### A.   Administrative and Procedural History

On September 12, 2014, Plaintiff filed her first application for disability insurance benefits ("DIB"), alleging an onset date of September 10, 2013. (AR 669). With counsel present, Plaintiff testified in a hearing on November 29, 2016. (AR 669). On February 9, 2017, the ALJ issued a decision finding Plaintiff was not disabled under the Social Security Act. (AR 669). Plaintiff's Request for Review by the Appeals Council was denied, (AR 669), and she appealed to this Court on April 4, 2017. (ECF No. 1). On October 31, 2018, this Court remanded the case pursuant to sentence six of 42 U.S.C. § 405(g) for further evaluation of new evidence of Plaintiff's hip replacement surgery which post-dated the ALJ's February 2017 decision. (AR 669–70).

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

The Appeals Council remanded this case to the same ALJ it was before previously but limited the decision in scope. (AR 670). On April 19, 2017, Plaintiff had filed a subsequent application for DIB in which she was found disabled as of February 10, 2017. (AR 670). Thus, the only period that required further adjudication was the time prior to February 10, 2017. (AR 670).

The ALJ held another hearing on November 6, 2019, at which Plaintiff—who was represented by counsel—and a vocational expert ("VE") testified. (AR 697–723). On December 12, 2019, the ALJ issued a decision finding Plaintiff not disabled under the Social Security Act during the relevant period between September 10, 2013, and February 9, 2017. (AR 669–684). Plaintiff filed exceptions to the ALJ's decision, (AR 891–93), but the Appeals Council declined to assume jurisdiction. (AR 661–62). At Defendant's request, this Court reopened the matter which is now fully briefed and ripe for adjudication.

      **B.**     **Plaintiff's Background and Testimony**

Plaintiff was 55 years old on her alleged onset date and was living with her husband and two adult children at the time of the first hearing. (AR 44). Plaintiff completed some college, and previously worked a desk job in purchasing and production planning. (AR 45–47, 707). She testified that she stopped working because she had Sjogren's Syndrome, dry mouth, frequent urination, anxiety, depression, migraines, hip, back, and knee pain. (AR 707–08). Plaintiff was taking Wellbutrin for depression, and Gabapentin for pain. (AR 709–10).

During the first hearing, Plaintiff testified that she received injections for her hip pain. (AR 711). In the second hearing Plaintiff explained that these injections were unsuccessful, and she had hip replacement surgery in May 2017 which helped her hip pain but not her knee pain. (AR 711). Plaintiff also testified that she had problems walking and was going to undergo gastric sleeve surgery. (AR 712). During the relevant period, Plaintiff testified that she could only walk about

twenty feet before sitting and had to change positions every 15–20 minutes while seated due to back pain. (AR 713–14). Plaintiff further complained that her Sjogren's Syndrome caused her to urinate frequently, "like two or three times an hour," and, in the second hearing, the ALJ gave Plaintiff a break during the hearing to use the restroom. (AR 715–16).

Plaintiff testified that she can shower, dress herself, manage her medication, care for her pets, prepare meals, handle her finances, clean, and dust. (AR 65–66, 219–20, 222, 719). Plaintiff reported that she buys groceries at the store but she buys most other things online or over the phone and when she leaves the house she tries to be gone for less than an hour. (AR 221). Plaintiff spends time with others, goes out to lunch every six to eight weeks, but can no longer attend sporting events due to her frequent need to use the restroom. (AR 222). Plaintiff testified that she mostly sits in a recliner, naps, and watches television during the day since she does not sleep well at night. (AR 66).

   **C.**  **Relevant Medical Evidence**

The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

   1. <u>Cynthia Genovese, M.D.</u>

Plaintiff saw her primary care provider, Dr. Cynthia Genovese, beginning in February 2016. (AR 538). Plaintiff reported no malaise or fatigue; no urinary urgency; and no arthralgia, myalgia, back pain, joint stiffness, joint swelling, ambulatory difficulty, or motor weakness. (AR 519–20, 527, 534, 539). Examination findings consistently showed no spinal deformity, tenderness, decreased range of motion, or muscular spasm; normal gait; good tone and strength; no erythema or tenderness; normal reflexes; and no cyanosis, clubbing, or edema. (AR 521, 528–29, 535–36, 540).

Dr. Genovese opined that Plaintiff could sit for 0–2 hours and stand/walk for less than one hour in an eight-hour day; occasionally lift less than ten pounds and rarely lift/carry ten pounds; rarely push/pull; occasionally reach in all directions; frequently handle, finger, and feel; and should avoid temperature extremes, dust, and humidity/wetness. (AR 49–96). She opined that Plaintiff would require multiple unscheduled breaks and excessive restroom breaks, be absent from work more than four days per month, and would have pain that constantly interfered with her concentration and attention. (AR 496).

        2.    Frederick Vivino, M.D.

At the recommendation of a doctor who specialized in oral medicine, Plaintiff saw rheumatologist Dr. Frederick Vivino, beginning in November 2013 for Sjogren's syndrome, with complaints of urinary frequency, frequent drinking, and dry mouth. (AR 354, 360, 366, 610, 619, 638). Examination revealed mouth dryness and a low salivary flow but otherwise Plaintiff was not in distress and presented well. (AR 368–69). A lip biopsy was "suggestive of Sjogren's." (AR 369). Dr. Vivino prescribed Exovac (for salivary flow) and recommended decreasing Zoloft "to alleviate the possible drying affect." (AR 369).

In a subsequent examination in June 2014, Dr. Vivino noted a dry tongue, but moist mucous membranes; no spinal tenderness; no right knee tenderness or swelling; and left knee tenderness. (AR 361–62). Plaintiff reported "mild improvement" on medication. (AR 362). Examination in November 2014 revealed no changes. (AR 355–56).

Following injections to her hip, Plaintiff saw Dr. Vivino in May and September of 2016. At that time, Plaintiff reported that the injections reduced her pain and she was able to walk with less difficulty but complained of right knee buckling and weakness. (AR 610, 616). Plaintiff reported that she was not doing her hip exercises and was using glasses to protect her eyes instead

of using the recommended artificial tears for dry eyes. (AR 610). On examination, Plaintiff had five degrees of medial instability with right knee adduction, but no other instability; bilateral knee swelling, but no tenderness or pain on range of motion; 5/5 strength; and normal gait and station. (AR 612). Dr. Vivino advised Plaintiff to continue hip injections, use Restasis for dry eyes, increase Evoxac for dry mouth, try tea lozenges, and lose weight. (AR 613). He also ordered an ophthalmology follow-up for dry eyes. (AR 613).

In November 2016, Plaintiff complained of worsening knee pain and instances of her knee "giv[ing] out." (AR 638). Plaintiff reported needing no help with personal care, traveling, shopping, feeding, or housework, and reported no bladder incontinence. (AR 639–40). Examination revealed tenderness in Plaintiff's right knee but no pain with flexion compression or rotation. (AR 641). X-rays showed severe osteoarthritis of the right hip joint and severe patellofemoral osteoarthritis of the right knee, with mild medial and lateral compartment osteoarthritis. (AR 635–36). A December 2016 CT showed spinal stenosis at L5-S1 which Dr. Vivino opined was causing Plaintiff's pain while walking. (AR 637). Dr. Vivino referred Plaintiff to a hip surgeon and advised her to continue medication and request an epidural injection if the pain was severe. (AR 637).

Dr. Vivino opined that Plaintiff could sit for 2–4 hours and stand/walk for one hour or less in an eight-hour day; needed a sit-stand option every thirty minutes; could occasionally lift/carry less than ten pounds; occasionally use the upper extremities to push/pull, but rarely use the lower extremities; occasionally reach; and frequently handle, finger, and feel. (AR 497). Dr. Vivino also opined that Plaintiff needed unscheduled breaks and restroom breaks every thirty minutes, for about five minutes each time. (AR 498). He indicated that Plaintiff would be absent four or more days per month. (AR 498).

6

3. <u>Joann Eufemia, M.D.</u>

In October 2014, Dr. Joann Eufemia, listed Plaintiff's symptoms of frequent urination, excessive thirst, migraines, and tendonitis. (AR 344). She opined that Plaintiff could sit for 0–2 hours and stand/walk for up to one hour per eight-hour day; rarely lift less than ten pounds; and had manipulative and environmental limitations. (AR 344–45). She also opined that Plaintiff would be absent three or more days per month. (AR 344–45).

In December 2015, Dr. Eufemia opined that Plaintiff could sit for 0–2 hours and stand/walk for less than one hour per eight-hour day; occasionally lift less than ten pounds, rarely lift ten pounds; occasionally reach; and would need multiple unscheduled breaks and excessive bathroom breaks. (AR 389–90).

4. <u>Tim Pinsky, D.O.</u>

On December 14, 2014, Plaintiff underwent an orthopedic consultative examination with Dr. Tim Pinsky. (AR 379–82). Plaintiff complained of frequent urination and arthritis in her right knee. (AR 380). She reported the ability to go up and down stairs at home, shower and dress, cook, pay bills, drive, and clean, do laundry, and shop with the help of her husband. (AR 380).

On examination, Dr. Pinsky reported Plaintiff's upper extremities showed full range of motion; intact fine and gross manipulation; intact deep tendon reflexes; intact sensation; 5/5 (full) muscle strength; and no significant tenderness. (AR 381). For the lower extremities, Plaintiff had full range of motion; intact deep tendon reflexes; intact sensation; and ratchet-like weakness in the right plantar flexor and extensor hallucis longus, but otherwise 5/5 strength. (AR 381). Dr. Pinsky noted mild tenderness on palpation posteriorly on the right heel. (AR 381). For the spine, Plaintiff had full range of motion with no palpable spasms or tenderness. (AR 381). Plaintiff had normal posture and gait, was able to change positions without difficulty, and could squat and rise. (AR

381). Lumbar x-rays showed mild degenerative changes, mild spondylothesis of L5 on S1, and mild scoliosis. (AR 381, 388).

Dr. Pinsky opined that Plaintiff would not be limited in her usual activities of daily living at that juncture but would expect "periodic exacerbations that would incapacitate [Plaintiff] in the future." (AR 382). Plaintiff was limited from walking on uneven terrain and climbing due to a recent fall that caused some ambulatory difficulties, but this was expected to resolve quickly. (AR 382).

### 5. Erik Thorell, M.D.

Dr. Erik Thorell, cited Plaintiff's "multiple degenerative conditions" in opining that Plaintiff could sit for six hours or more and stand/walk for one hour in an eight-hour day; needed a sit-stand option every thirty minutes; could lift/carry less than ten pounds frequently, twenty pounds occasionally, and twenty-five pounds rarely; frequently push/pull with her upper extremities and rarely push/pull with her lower extremities; frequently reach, finger, and feel; and occasionally handle. (AR 499). He noted that Plaintiff would require unscheduled breaks "as needed" and would miss 0–1 day of work per month. (AR 500).

### 6. State Agency Doctors Deogracias Bustos, M.D. and Arthur Pirone, M.D.

Plaintiff underwent a state agency consultation in January 2015 in which Dr. Deogracias Bustos found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, could stand/walk for four hours, sit with normal breaks for six hours, could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders/ropes/scaffolds. (AR 84–85). He came to his conclusion that Plaintiff could only stand/walk for four hours based on Plaintiff's right heel pain, obesity, and need to use the restroom

often. (AR 85). A second state agency physician, Dr. Arthur Pirone, concurred with Dr. Deogracias' findings in April 2015. (AR 95–98).

### 7. Total Hip Arthroplasty

On May 2, 2017, Plaintiff underwent a total hip arthroplasty without complications and progressed well with physical therapy after the surgery. (AR 1100, Exh. 37F). Plaintiff was discharged to rehabilitation on May 4, 2017. (AR 1100).

### D.     The ALJ's Decision

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 684); *see* C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from September 10, 2013, the alleged onset date, through February 9, 2017. (AR 673). At Step Two, the ALJ found Sjogren's syndrome, tendonitis of the right ankle, osteoarthritis of the right hip and knees bilaterally, degenerative disc disease of the lumbar spine, and obesity to be severe impairments. (AR 673).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. (AR 675–76). Before proceeding to Step Four, the ALJ determined that Plaintiff retained the residual functioning capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) except she can stand/walk for 2 hours and sit for 6 hours in an 8-hour workday, but must have the option to sit for 5 minutes after 30 minutes of standing/walking and stand for 5 minutes after 30 minutes of sitting; can only occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch or crawl; and can only frequently handle and finger.

(AR 676). Based on the testimony of the VE, the ALJ found that Plaintiff could perform past relevant work as a Production Coordinator and Purchasing & Production. (AR 683–84). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (AR 684).

### III. LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotations omitted); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

10

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

## IV. DISCUSSION

Plaintiff challenges the ALJ's RFC analysis and the finding that Plaintiff could perform past work activity. (Pla. Br., ECF No. 24 at 20, 30).

### A. The ALJ's RFC Analysis

In the RFC specifically, Plaintiff alleges that (1) the opinion on remand is not substantially different from the prior opinion despite the consideration of new evidence; (2) the ALJ failed to properly consider Plaintiff's subjective complaints; and (3) the ALJ did not properly explain her rejection of multiple medical opinions. (Pla. Br., ECF No. 24 at 20). For the following reasons, the Court finds these arguments unpersuasive.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a). Here, the ALJ determined that Plaintiff retained the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) except she can stand/walk for 2 hours and sit for 6 hours in an 8-hour workday, but must have the option to sit for 5 minutes after 30 minutes of standing/walking and stand for 5 minutes after 30 minutes of sitting; can only occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can occasionally stoop, kneel, crouch or crawl; and can only frequently handle and finger.

(AR 683).

In determining an individual's residual functional capacity in Step Four, the ALJ is required to consider "all relevant evidence in the case record." SSR 06-03p, 2006 WL 2329939, at *4; *see also* 20 C.F.R. § 416.920b. When presented with conflicting evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Plummer*, 186 F.3d at 429 (citing *Stewart v. Sec'y of*

*Health, Educ., & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983)) ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

First, to the extent that Plaintiff compares this RFC to the prior one in the February 6, 2017 decision, the ALJ is not prohibited from reaching the same conclusions as the prior decision—in other words, the new evidence need not change the result of the ALJ's decision. *See* 42 U.S.C. § 405(g) ("[T]he Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, *modify or affirm* the Commissioner's findings of fact or the Commissioner's decision, or both . . ."). It is clear that the ALJ considered Plaintiff's hip surgery as she discussed both the procedure's implications on the relevant time period and Plaintiff's RFC. (AR 682).

Second, Plaintiff contends that the ALJ did not properly consider Plaintiff's subjective complaints about her persistent urination that would interfere with her ability to work, a complaint that Plaintiff argues is "extensively documented in the medical records." (Pla. Br., ECF No. 24 at 25–26). The RFC is based on all the relevant evidence, including medical records, medical opinions, and the individual's subjective allegations. 20 C.F.R. § 404.1546(c). However, the ALJ need only include limitations that are credibly-supported by the evidence in the record. *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). "Where . . . a limitation is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." *Id*.

Notably, Plaintiff bears the burden at Step Four, *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007), yet has not pointed to a single page of the administrative record in support of her position that frequent urination limits her ability to work, leaving the Court to parse through the more than 1000-page record in this case. Nevertheless, after doing so, the Court finds this

13

argument unpersuasive as there is simply no medical evidence to support that subjective conclusion.

The ALJ summarized Plaintiff's hearing testimony and included Plaintiff's testimony that she "has to use the bathroom every 30 minutes for a couple minutes at a time," needed to use the restroom "about 3 times per hour," and was "constantly going to the bathroom." (AR 677). A few medical providers opined that Plaintiff would need frequent restroom breaks: Dr. Vivino, and Dr. Genovese opined that Plaintiff would need unscheduled breaks and excessive restroom breaks, (AR 496, 498), and Dr. Eufemia accounted for Plaintiff's frequent urination only in the earlier of her two opinions, without explanation as to what changed between the two, (AR 680–81).

The ALJ only granted these opinions little weight, as was within her discretion, for reasons that will be discussed subsequently in this Opinion. Plaintiff has not indicated that the ALJ failed to consider any of this evidence, *see, e.g.*, *Piper v. Saul*, No. 18-1450, 2020 WL 709517, at *3-4 (W.D. Pa. Feb. 12, 2020), but rather asks this Court to re-evaluate the weight assigned to evidence that was adequately considered by the ALJ. This Court declines to do so.

Further, to the extent that Plaintiff has the burden to show that there was sufficient evidence in the record to support her claim of frequent urination, she has neither pointed to it nor indicated what limitation it would require. *See Rutherford*, 399 F.3d at 552–53 (finding no error by ALJ in not considering Plaintiff's obesity where the Plaintiff did not specify how it impaired his ability to work but merely speculated it would make it more difficult for him to stand and walk). Even if Plaintiff had pointed to such evidence, she has not demonstrated that it was not already accounted for in Plaintiff's RFC; in other words, she has not shown how such an error would not be harmless. *Hill v. Comm'r of Soc. Sec.*, No. 19-20115, 2020 WL 7694007, at *2 (D.N.J. Dec. 24, 2020) ("Plaintiff . . . bears the burden, on appeal, of showing not only that the Commissioner erred but

also that the error was harmful."). For these reasons, the Court cannot find that the ALJ erred in her consideration of Plaintiff's complaint of frequent urination.

Plaintiff's final challenge to the RFC is that the ALJ failed to reject the testimony of three medical providers, Dr. Joann Eufenia, Dr. Cynthia Genovese, and Dr. Fredrick Vivino, (Pla. Br., ECF No. 24 at 26).

Because Plaintiff's application pre-dates the changes made to the regulations, the "treating physician rule" applies here—it states that if the ALJ found that "a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011). Thus, under the prior regulatory scheme, a treating physician's opinion was entitled to great weight but could still be rejected if there was contrary medical evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).

The ALJ's factual findings, including the RFC, do not need to follow a particular format "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). An ALJ may not substitute her own lay opinion for the medical opinions of experts. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (finding that the ALJ improperly supplanted the medical opinions with his personal observation, speculation, and credibility judgments).

Here, the ALJ afforded Dr. Eufeni's opinions, both the original and the subsequent submitted prior to the second hearing, little weight. (AR 680). The ALJ explained that Dr.

15

Eufenia's treatment was limited as a primary care provider, her opinions were not consistent with the record, were internally inconsistent, and lacked an explanation for changes between the first opinion to the second. (AR 680–81). As for Dr. Genovese, the ALJ gave her opinion little weight because it was inconsistent with the record and Dr. Genovese's own treatment notes. (AR 681). The ALJ cited Dr. Genovese's findings of "normal gait, good motor tone and strength of the extremities and normal reflexes," her conservative treatments, and her encouragement that Plaintiff exercise. (AR 681). Finally, the ALJ afforded Dr. Vivino's opinion little weight, citing conservative treatments "limited to the use of medications and herbal and vitamin supplements," and inconsistency with the record and his own treatment notes. (AR 681).

The Court finds Plaintiff's argument unpersuasive because the ALJ identified multiple reasons—including specific internal inconsistencies—to support the weight assigned to each doctor and made findings that were consistent with other medical opinions. (AR 680–82). When faced with conflicting opinion evidence, an ALJ has significant discretion in choosing whom to credit, *Brown*, 649 F.3d at 196 ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences."), and the Court is not at liberty to second-guess those findings where the ALJ has sufficiently explained her reasoning, *Nieves v. Comm'r of Soc. Sec.*, No. 20-02590, 2021 WL 2682629, at *2 (D.N.J. June 30, 2021) ("[T]he Court cannot re-weigh the evidence, and if the Court finds that the ALJ's decision is based on substantial evidence it must affirm even if the Court would have decided the case differently.").

Further, the ALJ's opinion is not lacking in support, nor is this a situation where the ALJ has rejected all of the medical opinions and evaluated the medical evidence entirely on their own. The ALJ accorded some weight to Dr. Thorell's opinion and great weight to Drs. Bustos and

16

Pirone. (AR 681–82). The ALJ relied on these doctors and crafted an RFC that was even more limited than they suggested—specifically accounting for evidence of osteoarthritis in Plaintiff's knee and hip. (AR 682). Thus, the ALJ gave Plaintiff the most restrictive RFC—sedentary work—with limitations greater than those of the doctors for whom she credited the highest. The Court cannot find that this conclusion is not supported by substantial evidence in the record.

For all these reasons, the Court finds the ALJ's RFC findings are supported by substantial evidence in the record.

### B.  The ALJ's Finding That Plaintiff Could Engage in Prior Work Activity

Plaintiff argues that the erroneous RFC resulted in an invalid determination as to the work Plaintiff could conduct. (Pla. Br., ECF No. 24 at 30). Having already concluded that the ALJ's RFC analysis and conclusion were supported by substantial evidence, *see infra* Section A, the Court finds this argument without merit. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005) ("[O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.").

### V.  CONCLUSION

For the foregoing reasons, the Acting Commissioner's final decision is **AFFIRMED**. An appropriate Order will be entered.

*Christine P. O'Hearn* (signature)

**Christine P. O'Hearn**
**United States District Judge**